UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
TRACEY HARRIS, LAWRENCE
O'ROURKE, and ANTHONY
GAGLIANO,

                Plaintiffs,                **MEMORANDUM AND ORDER**
                                                         22-CV-6612 (RPK) (JRC)
       v.

LOCAL 3, INTERNATIONAL
BROTHERHOOD OF ELECTRICAL
WORKERS,

                Defendant.
------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

        Plaintiffs Tracy Harris, Lawrence O'Rourke, and Anthony Gagliano allege in this action that defendant Local 3, International Brotherhood of Electrical Workers ("Local 3") breached its duty of fair representation under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159(a). Local 3 moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Local 3's motion is granted in part and denied in part. Though plaintiffs fail to state a claim for breach of the duty of fair representation stemming from Local 3's alleged failure to communicate with striking workers, their claim that Local 3 breached its duty by distributing settlement proceeds to non-Charter retirees may proceed.

## BACKGROUND

        The following facts are taken from the operative complaint and assumed true for the purposes of this order.

        Plaintiffs are former employees of Charter Communications, Inc. ("Charter"). Second Am. Compl. ("SAC") ¶ 2 (Dkt. #18). Plaintiffs were also members of Local 3, which was the collective bargaining representative of Charter's service technicians until 2022. *Id.* ¶ 1; *see id.* ¶¶ 5, 13.

1

In 2017, a majority of Local 3's members voted against calling a strike against Charter, but the union did so anyway later that year. *Id.* ¶¶ 5–6. The union paid the striking workers "strike pay" of $150 per week, for eight weeks, after the workers' unemployment benefits ended. *Id.* ¶ 7.

The strike continued for more than five years. *Id.* ¶¶ 9, 11. During the strike, a Charter employee filed a petition to decertify Local 3 as the collective bargaining representative of Charter technicians, and a regional director for the National Labor Relations Board ("NLRB") ordered a decertification election. *Charter Commc'ns*, No. 02-RD-220036, 2018 NLRB. Reg. Dir. Dec. LEXIS 63, at *13 (June 18, 2018). Both Local 3 and Charter challenged the validity of several of the ballots that were cast in the election. *Charter Commc'ns*, No. 02-RD-220036, 2021 NLRB Reg. Dir. Dec. LEXIS 87, at *1–2 (May 14, 2021). But before the NLRB could rule on the validity of the ballots, Local 3 disclaimed its interest in representing Charter technicians. *See* SAC ¶ 13.

Meanwhile, "[d]uring the first four years and eleven months of the strike," plaintiffs did not receive mail from the union "and were generally not given updates about what was occurring in negotiations." *Id.* ¶ 9. In 2019, Local 3 held its "last chapter meeting with the striking workers" and "was tight-lipped about the strike's progress." *Id.* ¶ 8. On March 23, 2022, a group of striking workers "showed up unannounced at Local 3's headquarters" and demanded an update on the strike. *Id.* ¶ 11. The Local 3 leaders who met with the striking workers "made no mention of a settlement agreement in the works." *Ibid.*

On or about April 18, 2022, "without notice [to] or consultation with the striking employees," Local 3 "reached an agreement with Charter whereby Local 3 disclaimed interest in representing the technicians at Charter, ended all litigation including NLRB charges alleging bad-faith bargaining, and accepted a sum of money." *Id.* ¶ 13. "Some of the money was to be paid to the Local 3 Pension Fund, to cover 'withdrawal liability,'" *ibid.*—that is, Charter's "proportionate

2

share of the pension plan's unfunded vested benefits," *Trs. of Loc. 138 Pension Tr. Fund v. F.W. Honerkamp Co. Inc.*, 692 F.3d 127, 130 (2d Cir. 2012).  According to plaintiff, "[u]pon information and belief," Charter intended "some of the money" it provided Local 3 "to be paid to those who had gone out on strike." SAC ¶ 13.  Nevertheless, rather than paying a bonus to Charter strikers specifically, Local 3 paid "a $1500 pension bonus" to "[a]ll Local 3 retirees . . . whether or not they were former Charter employees." *Id.* ¶ 14.

On or about April 30, 2022, plaintiffs received notice of the agreement between Local 3 and Charter and the union's disclaimer of interest. *Id.* ¶ 15.[1]  The letter did not provide information "about why Local 3 took the actions it took," "about the payments" or "who they were made to," about "what final offers the union rejected," or about what "was transmitted to [class] members." *Ibid.*

As a result of the strike's termination, plaintiff Tracey Harris lost her job with Charter. *Id.* ¶ 16.  Plaintiff Lawrence O'Rourke, who had returned to work for Charter during the strike, lost access to Local 3 wages and benefits, including the Local 3 Pension Plan, once Local 3 disclaimed its interest in representing Charter employees. *Id.* ¶¶ 2, 16.  Plaintiff Anthony Gagliano retired while the strike was ongoing and, as a result of the strike's termination, "lost any opportunity to return from the workforce from retiree status." *Id.* ¶ 16.

Plaintiffs filed this lawsuit on October 31, 2022.  *See* Compl. (Dkt. #1).  Plaintiffs allege that Local 3 violated its duty of fair representation under the NLRA because its communications with striking workers were deficient and because it paid money from its settlement with Charter to all Local 3 retirees, rather than to striking Charter workers. *See* SAC ¶ 18.  Specifically, plaintiff

---

[1] Both the initial complaint and the operative complaint state that plaintiffs did not receive the notice until "on or after April 30, 2023." SAC ¶ 18; *see* Compl. (Dkt. #1) ¶ 6.  But because plaintiffs filed their initial complaint in 2022, *see* Compl., I construe the 2023 date as a typo. *See, e.g.*, *Muhammadali v. City of New York*, No. 18-CV-1521 (WFK) (LB), 2018 WL 10808575, at *1 n.1 (E.D.N.Y. Apr. 5, 2018) (construing date mentioned in complaint as a typo).

3

alleges that Local 3's "failure to communicate even the details of the settlement agreement with Charter, much less ask for membership approval, and its failure to pay over and of the money from Charter to the members of the [c]lass, and to instead give numerous non-Charter[-]employed retirees a bonus check, was arbitrary, capricious, and in bad faith, and a breach of its duty of fair representation." *Ibid.*

Local 3 has moved to dismiss. The union argues, as relevant here, that plaintiffs' claims are time-barred and that their allegations are insufficient to state a claim for breach of the duty of fair representation. Mem. of L. in Supp. of Mot. to Dismiss ("MTD") 1, 14 (Dkt. #24).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To avoid dismissal on that basis, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (discussing Fed. R. Civ. P. 8). The facial "plausibility standard is not akin to a probability requirement," but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof [of the facts alleged] is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quotation marks omitted).

In reviewing a motion to dismiss, a court may consider only (i) the complaint itself, (ii) documents attached to the complaint or incorporated by reference, (iii) documents the plaintiff

4

both relied on and knew of when bringing suit, and (iv) matters in the public record which are properly subject to judicial notice.  *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999).

## DISCUSSION

Defendants' motion to dismiss is granted in part and denied in part.  The allegations in the complaint do not establish that plaintiffs' claims are time-barred.  As to the merits, plaintiffs' allegation that Local 3's communications with striking workers were deficient fails to state a claim for breach of the duty of fair representation, but plaintiffs' claim that Local 3 breached its duty by distributing settlement proceeds to non-Charter retirees may proceed.

### I.  The Allegations in the Complaint Do Not Establish that Plaintiffs' Claims Are Time-Barred.

Whether plaintiffs' claims are time-barred cannot be determined at this early stage of litigation.  At the motion-to-dismiss stage, a claim may be dismissed as untimely only if "the allegations in the complaint suffice to establish" that "relief is barred by the applicable statute of limitations."  *Jones v. Bock*, 549 U.S. 199, 215 (2007).  The statute of limitations for a claim that a union breached its duty of fair representation is six months.  *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 46 (2d Cir. 2014).  The claim "accrues no later than the time when plaintiffs *knew* or reasonably *should have known* that such a breach of the duty of fair representation had occurred."  *Ibid.* (citation omitted).  Plaintiffs allege that Local 3 breached its duty of fair representation in connection with its conduct surrounding the settlement agreement, SAC ¶ 18, and that they did not learn of the settlement agreement until receiving mail from Local 3 "on or after" April 30, 2022, *id.* ¶ 15.  Because none of the facts alleged in the complaint indicate that plaintiffs should have learned of the settlement any earlier, *see generally*

5

SAC, the six-month period for plaintiffs to file a claim could have expired on October 31, 2022, or some time soon after that date.[2] The allegations in the complaint therefore do not "suffice to establish" that the complaint—which was filed on October 30, 2022, *see* Compl. (Dkt. #1)—is untimely. *Jones*, 549 U.S. at 215; *see, e.g.*, *Findley v. United Parcel Serv., Inc.*, No. 21-CV-0131 (DG) (MMH), 2022 WL 20086756, at *4 (E.D.N.Y. Jan. 11, 2022) ("Plaintiff alleges that he learned that Local 804 Union refused to process his grievance '[o]n or about June 29, 2020' . . . . Plaintiff therefore had six months from June 29, 2020, when Plaintiff learned of the alleged breach of the duty of fair representation, within which to commence this action.").

## II. Only Some of Plaintiffs' Allegations Are Sufficient to State a Claim for Breach of the Duty of Fair Representation.

Plaintiffs' allegation that Local 3's communications with striking workers were deficient is insufficient to state a claim for breach of the duty of fair representation. But plaintiffs' claim that Local 3 breached its duty by distributing settlement proceeds to non-Charter retirees may proceed.

"The duty of fair representation is a 'statutory obligation' under the NLRA," *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)), that is "implied from [Section] 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a)," *White v. White Rose Food*, 237 F.3d 174, 179 n.3 (2d Cir. 2001). A claim for breach of the duty of fair representation has two elements: (i) the union's conduct must be "arbitrary, discriminatory, or in bad faith," and (ii) there must be "a causal connection between the union's wrongful conduct and [the plaintiffs'] injuries." *White*, 237 F.3d at 179 (citations omitted).

---

[2] Six months from April 30, 2022, is October 30, 2022, but that day was a Sunday, so the six-month period did not elapse until on or soon after the next day. *See* Fed. R. Civ. P. 6(a)(1)(C) ("[I]n any statute that does not specify a method of computing time . . . include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").

6

"Judicial review of union action, however, must be highly deferential, recognizing the wide latitude that unions need for the effective performance of their bargaining responsibilities." *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998) (quotation marks, alteration, and citation omitted).

Plaintiffs allege that Local 3 acted arbitrarily and in bad faith by (i) "fail[ing] to communicate even the details of the settlement agreement with Charter, much less ask for membership approval," and (ii) distributing settlement proceeds to all workers eligible for the Local 3 Pension Fund, regardless of whether they participated in the strike or even worked for Charter.  SAC ¶ 18.  "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational."  *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 68 (1991) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)).  "Bad faith requires a showing of fraudulent, deceitful, or dishonest action."  *Sim v. N.Y. Mailers' Union No. 6*, 166 F.3d 465, 427 (2d Cir. 1999).

Plaintiffs fail to state a claim that Local 3 acted arbitrarily and in bad faith through its poor communications with members.  Courts in this Circuit have consistently rejected claims that unions breached their duty of representation on comparable theories.  *See, e.g.*, *Caputo v. Nat'l Ass'n of Letter Carriers*, 730 F. Supp. 1221, 1230 (E.D.N.Y. 1990) ("A union does not act unfairly when it fails to consult with or advise a grievant of its bargaining activities, nor in the legitimate exercise of its discretion, need it obtain the employee's consent before settling a grievance." (citation omitted)); *Barrett v. Loc. 804 Union (IBT)*, No. 18-CV-2046 (MKB), 2022 WL 992525, at *7 (E.D.N.Y. Mar. 31, 2022) ("Local 804 did not have an obligation to maintain communication with [p]laintiff after it settled his grievance"); *Cover v. Am. Postal Workers Union, AFL-CIO*, No.

7

05-CV-2430 (LMS), 2006 WL 8441397, at *7 (S.D.N.Y. July 21, 2006) ("[A]s a matter of law, a union representative's failure to keep a grievant informed of the status of his or her grievance is not a breach of the duty of fair representation."). Those courts emphasized that unions have wide latitude in conducting bargaining activities. *See Caputo*, 730 F. Supp. at 1230; *Barrett*, 2022 WL 992525, at *7; *Cover*, 2006 WL 8441397, at *7. Plaintiffs cite no contrary authority. And they do not explain why, exactly, the union's actions in this respect were "so far outside a 'wide range of reasonableness,' as to be irrational," *Air Line Pilots*, 499 U.S. at 68 (quoting *Ford Motor Co.*, 345 U.S. at 338)), or reflected "fraudulent, deceitful, or dishonest" conduct, *Sim*, 166 F.3d at 427. Absent any "further factual enhancement," plaintiffs' allegation that Local 3 acted arbitrarily in its communications amounts to little more than a "naked assertion" of arbitrary and bad faith conduct that is insufficient to state a claim for relief. *Twombly*, 550 U.S. at 557.

Moreover, plaintiffs have failed to allege any "causal connection," *White*, 237 F.3d at 179 (citation omitted), between Local 3's failure to communicate with or seek approval from striking members and their injuries. Plaintiffs each allege that they suffered harm as a result of the settlement agreement or the end of the strike, *see* SAC ¶ 16, but they do not allege that, had Local 3 communicated with them or sought their approval, the union would not have settled with Charter, *see ibid.*; *see also Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 711 (2d Cir. 2010) (holding that plaintiffs "failed to plead a causal connection" where they did "not allege[] that, had a vote occurred" the union would not have entered an agreement with the employer). There is no suggestion in the complaint that Local 3's charter or bylaws required it to obtain approval from its members before settling with Charter. *See generally* SAC. And "[f]ederal labor law does not require rank-and-file ratification of employer-union agreements." *White*, 237 F.3d at 182. There is therefore no indication that Local 3's failure to communicate or obtain approval caused it to

enter into the settlement agreement that plaintiffs allege caused them harm.

Nevertheless, plaintiffs have stated a claim through their contention that Local 3 acted arbitrarily and in bad faith through its distribution of settlement proceeds. *See* SAC ¶ 18. A union may not distribute settlement award in a manner that is "arbitrary, discriminatory, or in bad faith," *White*, 237 F.3d at 179 (citation omitted); *see O'Hara v. Dist. No. 1-PCD*, 56 F.3d 1514, 1521–22 (D.C. Cir. 1995) (explaining that an allegation that a union "refus[ed] to distribute the proceeds of the award to its rightful recipients" can "amount to a violation of the duty of fair representation"). Applying this principle, one court held that a former union member stated a claim when he challenged a union's selective distribution of a settlement resulting from union grievances brought on behalf of the plaintiff and others. *Aledide v. Barr*, 607 F. Supp. 281, 285 (S.D.N.Y. 1985). The plaintiff in that case complained that the union violated its duties when it distributed the settlement it received to only active union members—thereby excluding the plaintiff, who had left the union. *Id.* at 283. The court found the plaintiff had adequately alleged the union actions were arbitrary on the ground that although the union's grievances had been brought "at least partially in [the plaintiff's] name," the union "diverted the award in such a way as to disproportionately benefit others while depriving [the plaintiff] of any redress." *Id.* at 285. The allegations of plaintiffs in this case are similar. Plaintiffs allege that a settlement paid by Charter in connection with a strike by Charter workers was distributed in a manner that excluded many Charter workers who had gone out on strike, while simultaneously benefiting union retirees who had never worked for Charter. *See* SAC ¶¶ 13–14. While a more developed record may well reveal a non-arbitrary basis for that distribution, these facts raise a sufficient inference of arbitrary, discriminatory, or bad faith action to survive a motion to dismiss.

In sum, though plaintiffs' claim related to Local 3's failure to communicate with striking

9

employees' fails, their allegation that Local 3 distributed settlement proceeds to non-Charter retirees is sufficient to state a claim for breach of the duty of fair representation.

## CONCLUSION

For the foregoing reasons, Local 3's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted in part and denied in part. Plaintiffs' claim for breach of the duty of fair representation arising from Local 3's failure to communicate with striking workers is dismissed for failure to state a claim. But plaintiffs' claim for breach of the duty of fair representation arising from Local 3's distribution of settlement proceeds to non-Charter retirees may proceed.

Should plaintiffs wish to amend their complaint in an effort to remedy the deficiencies discussed above, they shall file a motion within thirty days seeking leave to amend, with the proposed amended complaint attached as an exhibit. The motion should explain how the amended complaint addresses the pleading defects identified in this opinion.

SO ORDERED.

                                                   */s/ Rachel Kovner*
                                                   RACHEL P. KOVNER
                                                   United States District Judge

Dated: March 31, 2024
       Brooklyn, New York