UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x

TRACEY HARRIS, LAWRENCE
O'ROURKE, and ANTHONY
GAGLIANO,

                Plaintiffs,

     v.

LOCAL 3, INTERNATIONAL
BROTHERHOOD OF ELECTRICAL
WORKERS,

                Defendant.

**MEMORANDUM AND ORDER**
22-CV-6612 (RPK) (JRC)

-----------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

       Plaintiffs Tracey Harris, Lawrence O'Rourke, and Anthony Gagliano—former employees of Charter Communications, Inc. ("Charter")—claim in this lawsuit that defendant Local 3, International Brotherhood of Electrical Workers ("Local 3"), breached its duty of fair representation under the National Labor Relations Act, 29 U.S.C. § 159(a). Plaintiffs specifically allege that Local 3 violated this duty by distributing money that the union received from Charter as part of a settlement relating to a strike by Charter employees to Local 3 retirees, most of whom had never worked for Charter. Local 3 moves for summary judgment, arguing that the undisputed evidence shows that Local 3 never received money as part of a settlement with Charter. Because plaintiffs have failed to marshal any evidence suggesting otherwise, Local 3's motion is granted.

## BACKGROUND

      The following facts are taken from the parties' Rule 56.1 statements and relevant portions of the record and are undisputed unless otherwise noted.

1

A. **The Charter Strike and its Aftermath**

Plaintiffs are former employees of Charter, and were also members of Local 3. Local 3 acted as the collective bargaining representative for Charter's service technicians until 2022. *See* Local 3 Rule 56.1 Statement ¶ 19 (Dkt. #53). In 2017, Local 3 called a strike against Charter. *Id.* ¶ 4.

After the strike began, Charter continued to operate with replacement employees, supervisors, and workers who crossed the picket line. *Id.* ¶¶ 21–22. The company also unilaterally removed members of the Local 3 bargaining unit from a pension plan to which Charter had long contributed. *Id.* ¶ 6. Specifically, Charter terminated Local 3 members' participation in multiemployer employee benefit pension and welfare plans run by the Joint Industry Board of the Electrical Industry ("JIBEI")—including the Pension Trust Fund of the Pension, Hospitalization and Benefit Plan of the Electrical Industry (the "JIB Pension Plan"), a pension plan to which essentially all employers that have a collective bargaining agreement with Local 3 contribute for covered employees. *Id.* ¶¶ 7–9.

The strike against Charter lasted for more than five years. *See id.* ¶¶ 20–21. By 2022, however, few workers remained on the picket line; many had taken other jobs, retired, or crossed the picket line to work for Charter under terms the employer had unilaterally set. *Ibid.*

In 2022, Local 3 entered into an agreement through which it disclaimed interest in continuing to represent Charter employees. The agreement settled all pending litigation, NLRB charges, and disputes between the parties. *See id.* ¶¶ 25–27. As part of the settlement, Charter agreed to pay backpay to several specific, named employees or former employees whom Charter had allegedly subjected to unfair labor practices or discrimination. *See ibid.* However, the settlement agreement did not provide for any payments to be made to Local 3. *See* Settlement

2

Agreement Between Loc. 3 & Charter (Dkt. #54-4); Decl. of Lance Van Arsdale ¶¶ 19–26 (Dkt. #54).

That same year, Charter entered an agreement to pay withdrawal liability to the JIB Pension Plan. Local 3 Rule 56.1 Statement ¶ 31. Under the Multiemployer Pension Plan Amendments Act of 1980, an employer that effects a "complete withdrawal" from a multiemployer plan—meaning "permanently ceases to have an obligation to contribute under the plan" or "permanently ceases all covered operations under the plan"—must generally pay "withdrawal liability" to the plan. 29 U.S.C. §§ 1381(a), 1383(a); *see Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 196 (1997). The statute sets out a "complex scheme for calculating withdrawal liability," *Bay Area Laundry*, 522 U.S. at 196, the details of which are not relevant here.

Charter had represented since its withdrawal from the JIB Pension Plan in 2017 that it would "live up to its legal obligation" to the plan, but the company and the plan differed as to the amount of Charter's withdrawal liability. Local 3 Rule 56.1 Statement ¶ 31; Letter Re: Your New Wages & Benefits 2 (Dkt. #54-2). An arbitration hearing to resolve the amount was scheduled for 2022. *See* Decl. of Scott Feldman ¶¶ 5–9 (Dkt. #55); *see also* 29 U.S.C. § 1401 (providing for arbitration to resolve disputes by the withdrawing employer over the amount of withdrawal liability assessed by the plan). Before the hearing, however, Charter and the plan negotiated an estimated $80 million settlement of withdrawal liability, which was finalized and executed in May 2022. *Id.* ¶¶ 10–11; *see* Dep. of Chris Erickson 30:8–12 (Dkt. #61-4); Dep. of Scott Feldman 25:21–26:11 (Dkt. #61-5); Settlement Agreement Between Charter & Pension Fund 1 (Dkt. #61-7). As the plan and the union saw it, Charter settled its withdrawal liability "solely" with the plan, and its ultimate agreement was "unrelated" to Charter's union negotiations. Decl. of Lance Van

3

Arsdale ¶ 28; Decl. of Scott Feldman ¶¶ 16–17.  Charter would have settled with Local 3 even if it had not settled its dispute with the pension fund.  Dep. of Lance Van Arsdale 19:25–20:24 (Dkt. #61-3); Dep. of Chris Erickson 35:17–36:11.

    B.  **Plaintiffs' Lawsuit**

Plaintiffs filed this lawsuit alleging that Local 3 had violated the NLRA by breaching its duty of fair representation to plaintiffs and others.  As relevant to the summary judgment motion, plaintiffs alleged in their complaint that in resolving the strike, Charter had made a payment to Local 3 that "was intended, by Charter, to be paid to those who had gone out on strike."  Second Am. Compl. ¶ 13 (Dkt. #18).  Instead, plaintiffs claimed, Local 3 paid this money to "[a]ll Local 3 retirees" in the form of a $1500 pension bonus, "whether or not they were former Charter employees."  *Id.* ¶ 14; *see* Pls.' Opp'n to Def.'s Mot. for Summ. J. 1–2 ("Pls.' Opp'n") (Dkt. #61) ("The central allegation here is that the union got money out of Charter Communications, i.e., the withdrawal liability payment of $80 million, in return for disclaiming jurisdiction over the Charter Communications bargaining unit, and that that money was used to benefit the 20,000 or so retirees then collecting pensions, only a few of whom were Charter employees.").

On Local 3's motion to dismiss, the Court ruled that plaintiffs' case could proceed based on this allegation.  *See generally* Mem. & Order (Dkt. #27).  The Court explained that a claim for breach of the duty of fair representation has two elements: (i) the union's conduct must be "arbitrary, discriminatory, or in bad faith," and (ii) there must be "a causal connection between the union's wrongful conduct and [the plaintiffs'] injuries."  *Id.* at 6 (quoting *White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001)) (alteration in original).  The Court noted that while a union's actions would qualify as arbitrary only if "the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational," *id.* at 7 (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*,

4

499 U.S. 65, 68 (1991)), plaintiff's allegations regarding distribution of settlement payments adequately pleaded such conduct, *id.* at 9.

Local 3 indicated its intent to move for summary judgment. *See* Local 3 Mot. for Pre-Mot. Conf. (Dkt. #31). Over Local 3's objection, plaintiffs were permitted to engage in discovery into settlement and pension payments by Charter before that motion practice. *See* June 10, 2024 Min. Entry & Order; June 17, 2024 Min. Entry & Order. Local 3 then moved for summary judgment, arguing that plaintiff had failed to adduce any evidence that Local 3 had engaged in an arbitrary distribution of any settlement proceeds. *See* Def.'s Mem. of L. in Supp. of Mot. for Summ. J. ("Def.'s Mot.") (Dkt. #52).

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (citation and quotation marks omitted). "A fact is material if it might affect the outcome of the suit under the governing law." *Ibid.* (citation and quotation marks omitted). In determining whether there is a genuine issue of material fact, a court evaluates the whole record, resolving all ambiguities and drawing all reasonable factual inferences in favor of the non-movant. *See ibid.* A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

5

# DISCUSSION

Local 3 is entitled to summary judgment because plaintiffs have not adduced evidence to support their theory of arbitrary distributions.

The undisputed evidence in the summary judgment record shows that Charter never made a payment to Local 3 related to the settlement agreement ending the strike and that Charter's payments to the separate JIB Pension Plan were a settlement of the company's withdrawal liability to the Plan. *See* Def.'s Mot. 19–25. Local 3 supports its arguments regarding Charter's payments with witness testimony, *see* Decl. of Scott Feldman ¶¶ 16–17; Decl. of Lance Van Arsdale ¶ 28; *see also* Dep. of Lance Van Arsdale 19:25–20:24 (explaining that the strike settlement and Charter's withdrawal liability were "two different issues"); Dep. of Chris Erickson 35:17–36:11 (testifying that Local 3 would have settled the Charter strike even "without resolution of the withdrawal liability"), and documentary evidence showing, among other things, that Charter's statutorily mandated withdrawal liability arose from its 2017 withdrawal from the pension plan and thus was always owed, regardless of how the Charter strike ended. *See* Decl. of Lance Van Arsdale ¶ 27; Letter Re: Your New Wages & Benefits 2; Settlement Agreement Between Charter & Pension Fund 1; Notice & Demand for Payment of Withdrawal Liab. 1–2 (Dkt. #55-1); Decl. of Scott Feldman ¶¶ 5–10.

Plaintiffs have submitted no evidence from which a rational trier of fact could find that Local 3 obtained any funds from Charter that it then directed to non-Charter retirees. In response to Local 3's twenty-five page memorandum explaining why plaintiffs' claims are not supported by the factual record, plaintiffs submitted a five-page letter. *See* Pls.' Opp'n. To the extent the letter cites the record, it does so by simply listing several attached exhibits, without any explanation of their relevance to plaintiffs' arguments. *See id.* at 2–3.

6

Plaintiffs principally oppose summary judgment on the theory that *Local 3* has failed to explain the $80 million payment that Charter made to the JIB Pension Plan to settle its withdrawal liability. *See id.* at 1–2 (describing it as "astounding" that there is "[n]ot one word about the $80 million payment" in Local 3's summary judgment motion). Indeed, plaintiffs appear to concede that summary judgment would be appropriate if Local 3 officials had represented that this payment was separate from Charter's settlement agreement with the union, stating that "had union officials asserted that the payment of $80 million had no relationship to their decision to abandon the strike . . . we might have had a hard time proving otherwise." *Id.* at 2. But Local 3 officials have asserted just that—repeatedly. *See, e.g.*, Def.'s Mot. 23–24, Local 3 Rule 56.1 Statement ¶¶ 46–47; Decl. of Lance Van Arsdale ¶ 28; Decl. of Scott Feldman ¶¶ 16–17.

Against this evidence, plaintiffs' rank speculation that Charter's settlement with the pension plan must have been "in return for [Local 3's] abandoning Plaintiffs and their class," Pls.' Opp'n 2, cannot defeat Local 3's motion for summary judgment. *See Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) ("A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." (brackets and citation omitted)). Because Local 3 has successfully demonstrated the absence of a genuine dispute of material fact, Local 3 is entitled to summary judgment on plaintiffs' claim.

## CONCLUSION

For the foregoing reasons, Local 3's motion for summary judgment is granted. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

                                                 _/s/ Rachel Kovner_
                                                 RACHEL P. KOVNER
                                                 United States District Judge

Dated: August 14, 2025
       Brooklyn, New York